## JOHN ADDLEMAN *against* ANTHONY MASTERSON.

It is a fatal objection to a deposition, taken to be read in evidence in a cause, that it is in the hand writing of an attorney concerned in the cause, or specially employed by the party for that purpose, unless the opposite party, or his attorney, be present and consent thereto.

An application and survey may be abandoned, but whether or not, depends on the facts to be found by the jury. The payment of fees of office, of surveying fees, and returning the survey, are facts tending to repel the presumption of abandonment.

An application obtained in 1766, and the land circumscribed by a survey, marked on the ground, but the owner of the survey neglects to have it returned, and refuses to pay the surveying fees, and it continued in this way, until 1785, when a warrant issued for the same land to another. *Held:* That the title of the warrantee shall be preferred.

Error to the special Court of Common Pleas of Huntingdon county, (*Reed*, president.)

In the court below this was an action of ejectment brought by *Anthony Masterson* against *John Addleman.*

The plaintiff gave as evidence of his title—18th May, 1784, warrant to *Walter Hood*, "for three hundred acres, on a creek running into the Warrior-mark run, in or about a mile from the mouth of said branch, and about two miles from the Warrior-mark, in the county of Bedford."--19th January, 1785, certificate of the payment of the purchase money, thirty pounds.—25th August, 1785, deed, *Walter Hood* and wife to *Phineas Massey.*—29th March, 1787, certificate of the return of survey.—2d October, 1795, deed, *Phineas Massey* to *Anthony Masterson.*

The defendant then gave in evidence.—22d October, 1766, application No. 1629, of *Thomas Morris*, for three hundred acres, "to join on the westerly a survey on a large run, which leads into the east branch of Little Juniata, about a mile eastward from the path that leads from Little Juniata to Susquehanna, in Cumberland county." *William Reed*, a former deputy surveyor of the district was then called, and a draft of a survey of the land in dispute was shown to him, which he said he found in the office, when he held it in 1821; and that it had upon it the hand writing of *Richard Tea*, who had been the deputy surveyor of the district in 1767. He and all the other witnesses said that the description in the application of *Thomas Morris* was precisely descriptive of the land in dispute.—20th April, 1767, deed, *Thomas Morris* to *David Kennedy.* 4th June, 1795, order of the Board of Property, on a petition for a re-survey.—30th November, 1795, another order of the Board of Property on the subject.—21st May, 1796, return by *John Cannon*, deputy surveyor, by order of the Board of Property—31st May, 1796, deed, *David Kennedy* to *Michael Kryder.*—18th May, 1797, patent to *Michael Kryder.*—16th October, 1797, deed, *Michael*

(John Addleman *v.* Anthony Masterson.)

*Kryder* and wife to *John Addleman,* the defendant. It was also in proof, that the defendant's survey upon the ground, corresponded with the draft given in evidence, which was found in the office of the deputy surveyor; and upon blocking the trees, they counted back to 1767, when *Richard Tea* had been the deputy surveyor of the district.

Some evidence was also given to show that *Masterson* knew of the purchase of the land in dispute by *Addleman* from *Kryder* for a valuable consideration, and did not give notice of his claim; but this was negatived by the instruction of the court to the jury, and their finding.

During the course of the evidence, the defendant offered the deposition of Col. *John Cannon;* which was objected to by the plaintiff, on the ground that it was in the hand writing of *William Orbison,* Esq. the defendant's attorney.

Mr. *Orbison* sworn.—I wrote this deposition at the place designated. I have not a distinct recollection whether justice *Still* was in the room all the time or not; I remember he was in some of the time; no one appeared on part of the plaintiffs; one of the *Addlemans* was there. I was requested by Messrs. *Potter* and *Blanchard* to attend to it. I was concerned in a former suit with Mr. *Riddle* as counsel for the defendant. Mr. *Addleman* spoke to me, and said he would pay me if I would go and assist him to take this deposition. I did so, he never paid me any thing, and I do not consider myself engaged in this cause as counsel. I did appear as counsel in the cause, and my name is marked.

The court overruled the deposition, to which opinion the counsel for defendant took a bill of exception.

The counsel for plaintiff requested the court to charge the jury on the following points.

1st. That unless the jury are satisfied that the persons under whom the defendant claims, had a legal survey upon the ground in controversy, before the date of the warrant under which the plaintiff claims, the plaintiff is entitled to recover.

2d. That unless the jury have satisfactory evidence that a survey was made, by virtue of the application of *Thomas Morris,* by the proper deputy surveyor, before the date of the warrant to *Walter Hood,* the law will presume the application to have been abandoned.

3d. That even if the jury are satisfied that a survey was made by the deputy surveyor, by virtue of the application of *Thomas Morris,* previous to the date of the warrant of *Walter Hood,* yet if no money was paid on the application, but the *fees* of the office, and no surveying fees paid before the date of the said warrant, and the survey not returned, the jury, under the circumstances of this case, may consider the application and survey to have been abandoned.

(John Addleman *v.* Anthony Masterson.)

4th. That the deputy surveyor was not bound to return the survey until his fees were paid, and that due diligence has not been used in this case to perfect the title of the defendant, as against the title of the plaintiff.

The counsel for defendant requested the court to charge the jury on the following points:

1st. That if the jury believe, that the application of *Thomas Morris*, under which the defendant claims, is descriptive of the land in controversy, and was actually surveyed on the ground in 1767, by the then deputy surveyor, that the omission of the deputy surveyor to return the survey into the office until 1795, does not prejudice the defendant's right; and that he would be entitled to hold the land in preference to a subsequent warrant and survey in 1784.

2d. That the doctrine of abandonment does not apply to a descriptive location of 1766, actually surveyed in 1767, conveyed by deed poll in 1767, re-surveyed in 1796 on an order of the Board of Property of 1794, and patented in 1797; and can have no bearing on the present cause.

3d. That the draft found in the office of the deputy surveyor, endorsed by *Richard Tea*, the deputy surveyor, as the draft of *Thomas Morris'* survey on his location, in connection with the lines found on the ground, is *prima facie* evidence that the survey was made on *Morris'* application; and unless rebutted by other testimony, is conclusive of that fact.

The court in their answers to the several points put by the counsel on the one side and the other, left the fact to the jury, whether the delay to have the survey, upon the application under which the defendant claimed, returned for nearly twenty years, was the fault or neglect of the party; and if so, upon the whole case, the plaintiff was entitled to recover. If it was the fault or neglect of the deputy surveyor, the party would not be prejudiced thereby.

The jury found a verdict for the plaintiff.

*Blanchard* and *Potter*, for plaintiff in error.

Whether the location was absolutely descriptive or vague, it became certain when it was surveyed; and there could then be no presumption of abandonment, although the surveying fees were not paid. *Lowman* v. *Thomas*, 4 Bin. 51. *Lessee of Biddle* v. *Dougal*, 5 Bin. 142. The doctrine of abandonment is only applicable to those claims to land which are not founded upon contract, such as improvement rights; but a location is a contract, which there can be no presumption would be abandoned, unless there be *proof of facts* which will induce the jury to believe that such was the intention of the party. *Lilly* v. *Paschel*, 2 Serg. & Rawle, 395.

A deposition written by an attorney in the cause is not exceptionable on that account: the case of *Summers* v. *M'Kim*, 12 Serg. &

(John Addleman *v.* Anthony Masterson.)

*Rawle*, 406, is much stronger than this; there the deposition was not written in the presence of the justice, here it was, and by one who was not an acting attorney in the cause.

*Miles*, for defendant in error, whom the court requested to confine himself to the first point.

No money was paid upon the location but the mere fees of office, seven shillings: and the jury have found that the surveying fees were not paid, no survey returned for twenty-eight years, and this because of the negligence of the party. No act whatever in relation to the land in dispute had been done by those under whom the defendant claims, for nearly twenty years before the plaintiff's title commenced. The policy of the law will not suffer a man to select a tract of land and just do such acts respecting it, as will not make him liable to pay the commonwealth for it, but will prevent the commonwealth from disposing of it to another, who is willing to pay for it. That a claim like that of the defendant may be abandoned is fully settled. *Gilday* v. *Watson*, 11 *Serg. & Rawle*, 340. *Boyles* v. *Kelly*, 10 *Serg. & Rawle*, 217. *Chambers* v. *Mifflin, ante*, 78.

The opinion of the court was delivered by

ROGERS, J.—The rejection of the deposition of *John Cannon*, comes within the principle of *Summers* v. *M'Kim*, 12 *Serg. & Rawle* 410. It is immaterial whether *Orbison* was concerned in the conduct of the suit or not, as it appears he was specially employed to take the deposition of the witness. There is as much danger from testimony taken under such circumstances, as when the attorney is retained generally for the trial of the cause. Nor would it have altered the case, if *Orbison* had been specially authorised to write the deposition. It is not competent for the justice to make the attorney of one of the parties his clerk, to take a deposition, unless with the express consent of the other party, or in the presence of his attorney, and acquiesced in by him. We concur in the sentiments of the chief justice, in *Summers* v. *M'Kim*, and feel no disposition to relax the rule established in that case.

The remaining exceptions apply to the charge. It is said the court were in error, in instructing the jury that they might presume an abandonment of the defendant's right, under the application of *Thomas Morris*.

It was in evidence, that on the 22d October, 1766, *Thomas Morris* made application for three hundred acres of land, to join westerly a survey on a large run which leads into the east branch of the Little Juniata, about a mile eastward from the path that leads from Little Juniata to Susquehanna, in Cumberland county. It was submitted to the jury, as a question of fact, whether there had been a survey made on the ground, whether the survey had been returned, and if not returned, the reason it was not. The court was requested to say: that unless the jury had satisfactory

(John Addleman *v.* Anthony Masterson.)

evidence that a survey was made by virtue of the application of *Thomas Morris,* before the date of the warrant to *Walter Hood,* the law will presume the application to have been abandoned. That even if the jury are satisfied, that the survey was made previously to the date of the warrant to *Walter Hood,* yet if no money was paid on the application but the fees of office, and no surveying fees were paid before the date of the warrant, and the survey *was not returned,* the jury, under the circumstances of the case, may consider the application and survey to have been abandoned. The court were further requested to charge the jury, that the doctrine of abandonment does not apply to a descriptive location, (which it was contended this was,) of the year 1766, actually surveyed in 1767, conveyed by deed poll in 1767, re-surveyed in 1796, on the order of the Board of Property of 1794, and patented in 1797.

It was given in charge to the jury, that an application and survey may be abandoned. That whether there was an abandonment or not, depended on the facts found by the jury; but that payment of fees of office, of surveying fees, and returning the survey, are facts tending to repel the presumption of abandonment. That if the application was obtained in 1766, and the land circumscribed by a survey marked on the ground, but the owner of the survey refused to have it completed or returned, and refused on that account, to pay the surveying fees, and it continued in this way until 1785, when the warrant issued to *Walter Hood,* on which he made his survey, the latter would have a preference. In this direction we perceive no error. On the contrary, the charge of the court is in accordance with all the cases, many of which have been cited and relied on in the argument of counsel. The transaction must be viewed as it stood in 1785, when *Walter Hood* obtained his warrant, and made his survey. It is only by shutting our eyes to the state of things at that point of time, that any difficulty can arise; for the real question is, might the jury presume the application to have been *then* abandoned, or was *Morris* right in considering the application abandoned, when he obtained his warrant. In 1785, as the jury have found, although *Morris* had made an application for the land, and had made a survey, yet the survey had not been returned, because the owner of the survey had not paid the surveying fees. The failure to return the survey is not the *fault* of the deputy surveyor, but arises from the act or neglect of the party himself, for the deputy surveyor, as has been decided, is not bound to return the survey until the surveying fees have been paid. It would have the most mischievous effect, if it were competent to an individual to put in an application on which he pays no money to the commonwealth, with a description which may apply as well to other tracts, have a survey made upon it, and then by his own act or neglect, without any

(John Addleman *v*. Anthony Masterson.)

default in the deputy surveyor, withhold the return of survey for near twenty years. It would operate very much to the injury of the commonwealth, as it would enable individuals to obstruct the improvement of the country, by preventing the commonwealth from making a new grant of the land. Even a precisely descriptive warrant must be followed up with reasonable attention, in order to give title, from its date; so also the same course must be pursued on a vague warrant, to give title from the time of survey. If the owner of a vague or removed warrant suffers it to remain unreturned, for more than twenty-one years, and during that time has exercised no acts of ownership upon the land, the State, or any person, has a right to consider it as derelict, and whoever purchases, and pays for the land, under such circumstances, has a good title. 1 *Penn. Rep.* 74, *Chambers* v. *Mifflin*. Mr. justice Huston, in delivering the opinion of the court, says. "Although a warrant has been surveyed, yet if not returned, the owner may change its lines, or change its place altogether, and lay it on any other vacant land any where near; until it is returned, the State has no power to collect arrears of purchase money. It never can be, that a man can wait thirty or forty years, and all that time, be able to say, this is my land if I please, and not mine unless I please. I will take the land and pay the State for it, if the country improves, and it rises in value, or if somebody will render it valuable by improvement; but I will not take it, and pay the purchase money, unless something occurs to render it more valuable. Nor is it the law, that a man can commence procuring a title, from the State, and from pure negligence leave it in such a situation, for more than twenty years, as that he is not bound to take it, and no one safely can."

The plaintiff in error, relies upon the re-survey in 1796, on the order of the Board of Property, in 1794, and the patent in 1797; and this to be sure would be strong evidence, that after 1785, the owner of the application would not wish to be considered as having relinquished title to the land. But it must be kept in view, that previously to this time, the right of *Walter Hood* had intervened, and that nothing the plaintiff in error could have done afterwards, would effect that right. The question must be determined upon the titles as they stood at the time of the warrant and survey to *Walter Hood*.

Judgment affirmed.